DURANT v DEPARTMENT OF EDUCATION (AFTER REMAND, ON THIRD REMAND)

Docket No. 161321. Submitted October 6, 1993, at Detroit. Decided September 19, 1995, at 9:15 A.M. Leave to appeal sought.

Donald Durant and other residents of the Fitzgerald School District and the Fitzgerald Public Schools brought an action for mandamus in the Court of Appeals, seeking to compel the Department of Education and others to provide state funding of the Fitzgerald Public Schools in fiscal year 1979-80 in the same proportion as the funding in the 1978-79 fiscal year, in accordance with the provisions of the Headlee Amendment, Const 1963, art 9, §§ 25-34. The Court of Appeals, DANHOF, C.J., and M. F. CAVANAGH and D. R. FREEMAN, JJ., denied mandamus. 110 Mich App 351 (1981). The Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the matter to Court of Appeals for its consideration. 413 Mich 862 (1982). On remand, the Court of Appeals, DANHOF, C.J., and M. F. CAVANAGH and MACKENZIE, JJ., dismissed the complaint. 129 Mich App 517 (1983). The Supreme Court affirmed the substantive findings of the Court of Appeals, but concluded that the Court had erred in its reasoning and procedural disposition of the case and remanded the case to the Court of Appeals with instructions to appoint a special master to resolve the factual disputes and to report the findings to the Court of Appeals. 424 Mich 364 (1985). The Court of Appeals appointed a special master, Macomb Circuit Judge George R. Deneweth, who permitted the plaintiffs' to amend their complaint, denied the defendants' motion for summary disposition, and reported his findings of fact to the Court of Appeals. On second remand, the Court of Appeals, DANHOF, C.J., and GILLIS and MACKENZIE, JJ., made certain findings and remanded the matter to the special master for further findings. 186 Mich App 83 (1990). The Supreme Court, without vacating the decision of the Court of Appeals, remanded the matter to the Court of Appeals for reconsideration in light of the Supreme Court's decision in *Schmidt v Dep't of Ed*, 441 Mich 236 (1992). 441 Mich 930 (1993). On third remand, the Court of Appeals made certain findings and remanded to the special master for further proceedings. 203 Mich App 507

(1994). The Court of Appeals appointed retired Wayne Circuit Judge James E. Mies special master and directed him to hear the claims in this case, thirty-four other consolidated cases, and the similar claims of sixty-two other school districts in *Schmidt v Dep't of Ed* (Court of Appeals Docket No. 158968; former Court of Appeals Docket No. 132677; see 441 Mich 236 [1992]). On remand, the special master issued a report that addressed the claims of eighty-four school districts and made numerous findings.

After remand, on third remand, the Court of Appeals *held:*

The Court of Appeals adopts the report of the special master and the following findings by the special master.

1. Regarding the burden of proof when addressing the necessary costs of each school district, the plaintiffs must establish a prima facie case by showing the actual costs to all the school districts for each of the mandated services. The defendants then have the burden of proving that these actual costs were not necessary costs as defined by the Supreme Court in *Durant v State Bd of Ed,* 424 Mich 364 (1985).

2. Because the defendants chose to participate in the voluntary match program regarding school lunch funding, the state match monies are a part of the state-financed portion of the school lunch program for purposes of Const 1963, art 9, § 29.

3. For the purpose of determining the amount of categorical aid paid by the state to each "out of formula" plaintiff school district for the mandated programs at issue, the base revenue deduction will first be applied to all nonmandatory grants including Federal Insurance Contributions Act (FICA) reimbursement.

4. Ten of the plaintiff school districts may amend their complaint to join *Schmidt* as plaintiffs. Amendment of the complaint will not result in futility, undue delay, or prejudice to the nonmoving party.

5. Plaintiff Fitzgerald Public Schools is barred from asserting any claim for underfunding of its bilingual education programs because the doctrine of law of the case precludes it from revisiting an issue decided in *Durant v Dep't of Ed (On Second Remand),* 186 Mich App 83 (1990).

6. The findings of the special master regarding attorney fees are adopted.

Appropriate orders to be issued.

*Pollard & Albertson, P.C.* (by *Dennis R. Pollard* and *Richard E. Kroopnick*), for the plaintiffs.

·Frank J. Kelley, Attorney General, *Thomas L. Casey,* Solicitor General, and *Paul J. Zimmer, Jeffrey J. Butler,* and *Jane O. Wilensky,* Assistant Attorneys General, for the defendants.

Amicus Curiae:

*Hoekenga & Farrell, P.C.* (by *Daniel J. Hoekenga*), for the Michigan Education Association and the Warren Fitzgerald Education Association.

### AFTER REMAND, ON THIRD REMAND

Before: DOCTOROFF, C.J., and MACKENZIE and CORRIGAN, JJ.

PER CURIAM. In our prior opinion, *Durant v Dep't of Ed (On Third Remand),* 203 Mich App 507; 513 NW2d 195 (1994), we directed the special master to address certain issues in this original action under the Headlee Amendment, Const 1963, art 9, §§ 25-34. We have reviewed the briefs and the report of the special master and we note that, on the basis of our prior rulings in this case, the parties have stipulated both the factual aspects of plaintiffs' claims and the amount of underfunding.[1] Therefore, it is necessary for this Court to consider only the issues discussed below. We now adopt the report of the special master [see appendix].[2]

Plaintiffs contend that for fiscal years beginning in 1979-80, the Legislature has underfunded the school districts with regard to "categorical" or state-mandated educational programs, in violation of § 29 of the Headlee Amendment. Section 29 states that the state may not reduce the state-

---

[1] The parties reserved the right to appeal our prior rulings.·

[2] All attachments referred to in the report are part of the Court·of Appeals files.

financed proportion of the necessary costs of any existing activity or service required of local governments by state law. Const 1963, art 9, § 29.

After our decision on third remand, we appointed retired Wayne Circuit Judge James Mies as special master. We directed the special master to hear the claims in this case, thirty-four other consolidated cases, and the similar claims of sixty-two other school districts in *Schmidt v Dep't of Ed* (Court of Appeals Docket No. 158968; former Docket No. 132677; see 441 Mich 236, 247-248 [1992]). The special master's report addresses the claims of eighty-four school districts.

We adopt the following findings of the special master:

(1) Regarding the burden of proof when addressing the necessary costs of each school district, plaintiffs must establish a prima facie case by showing the actual costs to all the school districts for each of the mandated services. Defendants then have the burden of proving that these actual costs were not necessary costs as defined by the Supreme Court in *Durant v State Bd of Ed,* 424 Mich 364; 381 NW2d 662 (1985).

(2) Because defendants chose to participate in the voluntary "match program" regarding school lunch funding, the state "match" monies are a part of the state-financed portion of the school lunch program for purposes of Const 1963, art 9, § 29.

(3) For the purpose of determining the amount of categorical aid paid by the state to each "out of formula" plaintiff school district for the mandated programs at issue, the base revenue deduction will first be applied to all nonmandatory grants including Federal Insurance Contributions Act (FICA) reimbursement.

(4) Ten plaintiff school districts may amend their

complaint to join *Schmidt* as plaintiffs. Amendment of the complaint would not result in futility, undue delay, or prejudice to the nonmoving party.

(5) Regarding the claims of plaintiff Fitzgerald Public Schools for underfunding of bilingual education programs, the doctrine of law of the case precludes plaintiff Fitzgerald Public Schools from revisiting an issue decided in *Durant v Dep't of Ed (On Second Remand),* 186 Mich App 83; 463 NW2d 461 (1990). Plaintiff Fitgerald Public Schools is barred from asserting any claim for underfunding of its bilingual education programs.

We also adopt the findings of the special master regarding attorney fees. Orders shall issue.

### APPENDIX

### REPORT OF SPECIAL MASTER

### PREFACE

By an Order of the Court of Appeals dated June 22, 1994, the undersigned was appointed to serve as a Special Master to hear the claims of the eighty-four plaintiff school districts in these consolidated cases, which involve alleged underfunding pursuant to Const 1963, art 9, § 29. During the course of the appointment, the Special Master held a number of conferences with counsel for the respective parties, both in person and by telephone. Briefs were filed on various legal issues and the Special Master rendered four separate written opinions and entered corresponding Orders. Copies of the Opinions and Orders are appended to and made a part of this Report. Hearings are conducted on September 20, 1994, December 9, 1994 and May 11, 1995. The Special

Master now files this Report of his findings with the Court of Appeals.

### THE FINDINGS OF THE SPECIAL MASTER

In an Order dated February 2, 1993, the Michigan Supreme Court returned the case of *Durant v Dep't* of Education to the Court of Appeals "for reconsideration in light of the Supreme Court's decision in *Schmidt v Dep't of Education,* 441 Mich 236 [; 490 NW2d 584] (1992)." 441 Mich 930 (1993).] In an Opinion dated February 8, 1994, the Court of Appeals, in turn, remanded the matter to a special master; the position to which the undersigned was subsequently appointed. [203 Mich App 507 (1994).] The February 8, 1994 Opinion of the Court of Appeals offered what the Court termed a "roadmap" to the special master and the parties to assist in completing the task at hand.

Following several scheduling conferences and the Special Master's issuance of a written opinion on the issue of burden of proof in these proceedings, the parties appeared before the Special Master on September 20, 1994 to commence the first phase of the trial in the consolidated actions. As set forth by the Michigan Supreme Court in *Schmidt* and the Court of Appeals in its February 8, 1994 Opinion in *Durant,* the purpose of this first phase was to determine the statewide base year funding percentages for the five mandated categorical programs at issue in these proceedings. Testimonial evidence was not required as counsel placed on the record a stipulation that the state financed proportion of the necessary costs of the five categorical programs in the 1978-79 base year were as follows:

| | |
|---|---|
| Special Education | 28.6138% |
| Special Education Transportation | 70.4165% |
| Driver Education | 41.8480% |
| School Lunch | 6.0127%[1] |
| Bilingual Education | 60.0000% |

In stipulating to these funding percentages, âs well as the individual claims of underfunding that will be discussed below, the parties specifically noted that their agrement on the factual aspects of the plaintiffs' claims of underfunding was premised on controlling rulings of the Court of Appeals which the Special Master was not called upon to revisit. The parties reserve their right to appeal these rulings to the Michigan Supreme Court. The Special Master did rule upon an issue involving the School Lunch program, as well as several other legal issues that arose during the second phase of the proceedings.

The second phase of the proceedings under *Durant, supra* and *Schmidt v Department of Education,* 441 Mich 236; 490 NW2d 584 (1992), is to determine the proportion of funding received by each of the plaintiff school districts for the above-mentioned programs in years subsequent to the 1978-79 base year; also referred to as the "payout years." The parties appeared before the Special Master on December 9, 1994 and agreed that testimony would not be necessary for this second phase. Instead, individual seven page packets were received into evidence for each of the eighty-four plaintiff school districts (Trial Exhibits A-1 through A-84), reflecting the agreed factual claims of underfunding through the 1992-93 school year. A very limited number of areas of factual dispute were noted on the record, all of which have now been resolved, with the exception of the bilingual education claim of the Pontiac

---

[1] At the time the stipulated percentages were placed on the record, the parties agreed that the School Lunch percentage would be less if the Special Master ruled in favor of the defendants on a legal issue involving the so-called "state match." In an Opinion dated December 7, 1994, the Special Master held that the state match monies are part of the "State financed proportion" for purposes of Const 1963, art 9, § 29. The 6.0127% figure thus remains the agreed percentage.

School District. It is the understanding of the Special Master that the parties are continuing to discuss this claim.

On the December 9, 1994 trial date, the parties further agreed that three legal issues were properly before the Special Master. These issues were:

1. Whether the Base Revenue Deduction should be allocated on a pro-rata basis against funding for all categorical programs or applied first against non-mandated categorical programs?

2. Whether the claims of nine named plaintiff school districts for the 1989-90 and 1990-91 school years, and the claims of the Farmington Public School District for the 1990-91 school year are barred by the statute of limitations?

3. Whether the bilingual education claim of Fitzgerald Public Schools is barred for all years by the legal doctrine of "law of the case"?

On March 7, 1995, the Special Master rendered an Opinion on the three legal issues. Following the parties' receipt of the Opinion, the previously stipulated exhibits were amended, consistent with the Special Master' ruling. The amended Exhibits A-1 through A-84 which reflect the plaintiffs' factual claims of underfunding through the 1992-93 school year, are appended to this Report.[2]

Again, the stipulated exhibits are based on the legal rulings of the Special Master and Court of Appeals to date. The parties have not waived any right of appeal with respect to these issues. Moreover, for the convenience of · all parties, and in the interest of judicial economy, the

---

[2] In the Third Amended Complaints herein, plaintiffs' claims of underfunding extend through the 1993-94 school year. However, the date from which the amount of those claims may be determined, consistent with the manner in which plaintiffs' claims were determined through the 1992-93 school year, is not yet on file with the Michigan Department of Education. The parties have agreed that the judgments will be supplemented when the information is available.

parties have appended alternative computation sheets to the amended exhibits. These documents contain stipulated figures that would be substituted if the Court of Appeals were to rely differently on any of the several matters decided by the Special Master. This avoids the necessity of any future remand to the Special Master.

Together with the amended Exhibits A-1 through A-84, the parties have prepared and delivered proposed forms of judgment to the Special Master. The Special Master has reviewed the amended Exhibits, as well as the proposed forms of judgment, and finds that the judgments are in appropriate form for entry by the Court of Appeals. The original unexecuted judgments accompany this Report.[3]

With the submission of this Report, the Special Master is of the opinion that he has completed the assignment made through the Court of Appeals' Order of June 22, 1994.


————————— /s/ —————————

Hon. James E. Mies
Special Master

—————————————————————————

[3] Pre-judgment interest has been computed through May 15, 1995 pursuant to MCL 600.6013(4) and (6) [MSA 27A.6013(4) and (6)]. Plaintiffs are entitled to additional pre-judgment interest from May 15, 1995 through June 30, 1995 at the ate of 8.38 percent and from July 1, 1995 through the date of judgment at the rate then in effect.